**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIE RODRIGUEZ,

Plaintiff,

v.

9:18-CV-1380
(TJM/DJS)

M. GOINS,

Defendant.

**APPEARANCES:** **OF COUNSEL:**

WILLIE RODRIGUEZ
Plaintiff, *Pro Se*
18-A-4626
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAYNARD, O'CONNOR, SMITH & CATALINOTTO, LLP
Route 9W
P.O. Box 180
Saugerties, NY 12477

MICHAEL E. CATALINOTTO, JR., ESQ.
ADAM T. MANDELL, ESQ.

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Willie Rodriguez brought this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was in custody at the Ulster County Law Enforcement Center. *See* Dkt. No. 7, Am. Compl. Following initial review of his Amended Complaint, a failure to intervene claim against Defendant Goins was permitted to proceed. Dkt. No. 8. Defendant has now moved for

summary judgment on the bases that (1) Plaintiff's claim fails as a matter of law; and (2) Defendant is entitled to qualified immunity. Dkt. No. 23. Plaintiff has opposed the Motion, Dkt. No. 31, and Defendant has submitted a Reply, Dkt. No. 32.

## I. BACKGROUND

Plaintiff alleges in his Amended Complaint that Defendant Goins failed to protect him and to intervene when a fellow inmate, Christopher Bell, attacked Plaintiff, beating him and causing him injuries. Am. Compl., *generally*. At that time, Plaintiff was housed in the General Population Unit of F Pod within the jail, Mr. Bell was in the Administrative Segregation section of F Pod, and Defendant was working as a corrections officer in the F Pod. Dkt. No. 23-8, Goins Decl, ¶¶ 3 & 5-6. Plaintiff alleges in his Amended Complaint that in administrative segregation, Mr. Bell was in a plexiglass-enclosed unit that could only be opened remotely with a pass code, or manually with a key. Am. Compl. at ¶ 1. Plaintiff notes that Mr. Bell was confined there as a result of Mr. Bell having assaulted other inmates in the past. *Id.* Plaintiff describes that when serving inmates in administrative segregation food, a member of the Sheriff's Emergency Response Team brings the inmate his food, with the unit officer stationed at his desk and patrol panel, and that if at any time such an inmate needs to leave, he is escorted in handcuffs after locking the entire unit into their cells. *Id.* at ¶¶ 2-3.

Plaintiff alleges that on April 25, 2018, Defendant Goins was the assigned unit officer for F-Pod, and that from the beginning of Defendant's shift until the incident occurred, he witnessed several verbal arguments between Bell and Plaintiff. *Id.* at ¶ 4. Plaintiff asserts that Mr. Bell spit in his face directly in front of Defendant. *Id.* Plaintiff

alleges that when dinner then arrived, Defendant opened the door separating segregation from general population, without locking the general population inmates, including Plaintiff, into their cells. *Id.* at ¶ 6. Defendant then allowed Bell to stand halfway out of the doorway, and Mr. Bell told Defendant that he wanted to give Plaintiff items from his tray. *Id.* at ¶ 7. Defendant called Plaintiff to the door and allowed Bell to hand him the items. *Id.* Plaintiff then returned to his table, and Defendant called him again and said Bell wanted to give him his whole tray; Plaintiff repeatedly told him that Bell would try to do something, but Defendant just laughed at told him to come get the tray. *Id.* at ¶ 8. Plaintiff alleges that once he attempted to grab the tray, Defendant moved to the side and allowed Bell to proceed past him and Bell began assaulting Plaintiff for several minutes. *Id.* Plaintiff alleges that once Defendant realized how bad Plaintiff was and the amount of blood on his face and clothes, he told Bell "enough." *Id.* at ¶ 9. Plaintiff maintains that as a result of the altercation, he sustained head trauma, neck and back pain, a burning feeling in both legs, and numerous facial abrasions and contusions, for which he was prescribed medication and tests were performed, and from which he still experiences constant pain. *Id.*

In his Declaration, Defendant states that prior to the April 25, 2018 fight between Plaintiff and Mr. Bell, he was unaware of any prior altercations or animosity between them; he had not witnessed any fights or arguments between them, and Plaintiff had not informed him of any prior fights or arguments between them. Goins Decl. at ¶¶ 8-10. Moreover, Defendant states that he did not see Mr. Bell spit on or otherwise antagonize Plaintiff. *Id.* at ¶ 11. In addition, he states that the Ulster County Jail maintains records

of inmates with known enemies, and that when inmates have previously had altercations or arguments, they are placed on a "No Contact List." *Id.* at ¶ 13. Prior to the fight on April 25, 2018, Plaintiff and Mr. Bell were not known enemies of each other and were not on the No Contact List. *Id.* Regarding the incident at issue, he states that as Plaintiff approached the Administrative Segregation Unit, Defendant positioned his body between the gate separating the general population and the administrative segregation section of the pod. *Id.* at ¶ 15. He observed that Mr. Bell was attempting to come out of the administrative segregation section and Defendant stepped further in front of inmate Bell, attempting to block him and prevent him from entering the general population area. *Id.* at ¶¶ 16-17. He states that while blocking Mr. Bell, he ordered Plaintiff more than once to back away from the administrative segregation unit, but Plaintiff continued to proceed towards the unit and positioned himself directly behind Defendant. *Id.* at ¶¶ 18-19. Mr. Bell then broke free, knocked Defendant's radio to the ground, and began fighting with Plaintiff. *Id.* at ¶ 20. Defendant states that he immediately retrieved his radio and called for the Rapid Response Team to assist with ending the fight, and then attempted to position his body between the inmates to stop the fight. *Id.* at ¶¶ 21-22. He ended the fight before assistance arrived, and the fight lasted approximately thirty seconds. *Id.* at ¶ 23. He affirms that the fight was sudden and spontaneous, and that he had not received any information prior that would have enabled him to anticipate it. *Id.* at ¶ 25. Defendant also submits to the Court a video of the incident. Dkt. No. 23-2.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora*

*Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Plaintiff's Response to Defendant's Statement of Material Facts

In his Reply, Defendant asserts that Plaintiff either conceded or failed to adequately refute the facts asserted in Defendant's Statement of Material Facts, by failing to identify evidence or cite to any exhibits that support his contentions. Dkt. No. 32, Def.'s Reply, pp. 1-2.

The Northern District of New York's Local Rules provide that a party opposing a motion for summary judgment must file a response to the moving party's Statement of Material Facts, mirroring the movant's "by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each

denial shall set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R 7.1(a)(3). Those Rules further provide that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a Rule 7.1 statement of material facts. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts). Here, considering Plaintiff's *pro se* status, the Court will review the entire summary judgment record to ascertain the undisputed material facts, citing to the facts as set forth in Defendant's Rule 7.1 Statement of Facts when properly supported by the record, and also referring to Plaintiff's submissions when practicable. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

**B. The Merits of Plaintiff's Claims**

*1. Plaintiff's Failure to Protect Claim*

Defendant contends that he is entitled to summary judgment on Plaintiff's claim because he was not deliberately indifferent to Plaintiff's safety. Dkt. No. 23-10, Def.'s Mem. of Law, pp. 2-6. In particular, Defendant contends that he had not been made aware of any risk to Plaintiff from Mr. Bell, and that he did not act with deliberate indifference because he was unaware of any facts from which he could have reasonably drawn an inference that Plaintiff was in danger. *Id.* at pp. 4-6.

At the time of the events underlying his claims, Plaintiff was a pretrial detainee. Dkt No. 23-1 at ¶ 4; *see also* Dkt. No. 1 at p. 2 (indicating confinement status when the alleged wrongdoing occurred was that of a pretrial detainee). As such, the Court construes Plaintiff's failure to protect claims as brought under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To succeed on such a failure to protect claim, a plaintiff must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm" and that "the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Barnes v. Harling*, 368 F. Supp. 3d 573, 596 (W.D.N.Y. 2019) (quoting *Darnell v. Pineiro*, 849 F.3d at 35). "Prison officials have a duty to take reasonable measures to protect an inmate from violence by other inmates"; failure to do so may constitute a constitutional violation. *Baker v. Tarascio*, 2009 WL 581608, at *2 (D. Conn. Mar. 6, 2009). However, "[n]ot . . . every

injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Zimmerman v. Macomber*, 2001 WL 946383, at *6 (S.D.N.Y. Aug. 21, 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The thrust of Defendant's argument is that he cannot be found deliberately indifferent because the circumstances surrounding the attack did not make him aware that Plaintiff was at a substantial risk of serious harm from Mr. Bell. Plaintiff argues that Defendant was aware, because Plaintiff told him Mr. Bell spit on him and was "going to try something." Dkt. No. 31 at p. 1;[1] Dkt. No. 23-3, Pl.'s 2018 Dep., p. 28. He also asserts that Mr. Bell was in administrative segregation because he had assaulted other inmates, and was not supposed to have contact with the F population. Dkt. No. 31 at p. 1; Dkt. No. 31-1 at p. 2. He argues that by allowing Mr. Bell access to Plaintiff, Defendant created an obvious risk to him. *Id.*

In order for a corrections officer to be held liable for failing to protect an inmate from another inmate, the corrections officer must have been aware of a "clear and specific threat" of harm to that inmate. *Velez v. City of New York*, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019). Courts in this Circuit dealing with similar scenarios have required that the corrections officer have knowledge of past violence between the two specific inmates, or of a specific threat of violence from the specific offender in order to find liability. *See Zimmerman v. Macomber*, 2001 WL 946383, at *9 (finding "[n]o

[1] Citations to Plaintiff's Opposition are made to the page numbers automatically assigned by the Court's CM/ECF system.

circumstances [ ] suggest [defendant] was aware or should have been aware that Robinson's words were anything more than an empty threat" where the attacker threatened to kill plaintiff and plaintiff allegedly advised defendant that the fight wasn't over); *Desulma v. City of New York*, 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (finding defendant had no reason to infer the existence of a threat of harm where there was no prior history of violence between the inmates and threats were only verbal, where plaintiff requested protective measures and defendant witnessed verbal altercation, including a threat that plaintiff was "going to pay a price"); *Velez v. City of New York*, 2019 WL 3495642, at *5 (explaining that, even if officer was aware the inmate had a propensity for violence, there was no evidence that he should have been aware of a specific risk to the plaintiff); *Grant v. Hogue*, 2019 WL 3066378, at *6-7 (S.D.N.Y. July 12, 2019) (finding defendant's release of inmate from a cell that resulted in inmate beating plaintiff was not intentional or reckless because there was no keep separate order, although plaintiff alleged he had described prior conflicts to defendant); *Dexter v. Thompson*, 1995 WL 495072, at *5 (W.D.N.Y. Aug. 18, 1995) (finding plaintiff's assertion that he had informed defendant of an enemy relationship "might arguably have caused a more conscientious official to investigate further," but that "the plaintiff has at the most merely shown negligence on the part of [defendant]"). Against this backdrop of cases, the Court recommends granting the Motion.

Here, Plaintiff does not allege that he had any physical altercation with Mr. Bell in the past, or that Mr. Bell had made any threats of physical violence against Plaintiff. In addition, in his deposition, Plaintiff stated that he already had gone over and had an

uneventful interaction with Mr. Bell in front of Defendant immediately before the attack, and that Mr. Bell did not do anything threatening in that interaction. Pl.'s 2018 Dep. at p. 20; Dkt. No. 23-6, Pl.'s 2019 Dep., p. 55.

Plaintiff asserts that Mr. Bell was in administrative segregation due to past assaults of other inmates and thus was a generalized threat to all inmates in general population. Dkt. No. 31 at p. 1; Dkt. No. 31-1 at p. 2. Such a contention is entirely conclusory, however; Plaintiff provides no evidence or factual information regarding any past assaults or problems involving Mr. Bell. In addition, such an argument does not satisfy the requirement that the threat against Plaintiff be clear and specific. *See Velez v. City of New York*, 2019 WL 3495642, at *5. Here, therefore, Plaintiff alleges no clear and specific threat that created a substantial risk of serious harm that Defendant knew or should have known of. It is possible that Defendant's handling of the situation was negligent, but it does not establish deliberate indifference, exhibited by the type of intentional or reckless conduct required under *Darnell*. *Darnell v. Pineiro*, 849 F.3d at 35. Indeed, as for Defendant's state of mind, the video of the altercation shows Defendant blocking Mr. Bell's cell when Plaintiff approached, demonstrating that he was not deliberately indifferent to any risk to Plaintiff's health. Dkt. No. 23-2, Video at 1:30-1:35.

*2. Plaintiff's Failure to Intervene Claim*

"In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a

fair opportunity to protect the inmate without risk to himself, yet fails to intervene."[2] *Henry v. Cty. of Nassau*, 2015 WL 2337393, at *7 (E.D.N.Y. May 13, 2015) (internal quotation marks omitted) (citation omitted) (finding that, as a matter of law, plaintiff could not state a plausible claim because the fights only lasted between one and a half and two minutes, and therefore were not of sufficient duration that an officer would have had a reasonable opportunity to attempt to prevent the attack from continuing). "[T]he law in this Circuit is clear that officers are under no obligation to put their own safety at risk by intervening in inmate fights." *Velez v. City of New York*, 2019 WL 3495642, at *5.

Here, the video evidence shows that Defendant did not fail to intervene in the altercation. Defendant attempted to block Mr. Bell from Plaintiff, and when that failed, he broke up the fight after about thirty seconds, by putting himself between Plaintiff and Mr. Bell while Mr. Bell was still swinging at Plaintiff. *See* Video at 1:55-2:15. Because Defendant quickly intervened and broke up the fight, by inserting himself into the altercation, the Court recommends that any failure to intervene claim be dismissed. *See Sullivan v. Graham*, 2011 WL 4424355, at *7 (N.D.N.Y. Aug. 5, 2011), *report and recommendation adopted*, 2011 WL 4424350 (N.D.N.Y. Sept. 21, 2011) ("[A]ny contentions [plaintiff] proffers indicating that defendants were untimely in their reactions is belied by the record.").

[2] Again, because this claim is brought pursuant to the Fourteenth Amendment, Plaintiff "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d at 35.

**C. Qualified Immunity**

Defendant also contends that, should the Court find he did violate Plaintiff's constitutional rights, he is entitled to qualified immunity, because his actions did not clearly violate any rights of Plaintiff and because he acted in an objectively reasonable manner. Def.'s Mem. of Law at pp. 6-8.

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, even if the Court were to accept that a question of fact existed as to the underlying violation, the Court would recommend finding that Defendant is entitled to qualified immunity.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 23) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 17, 2020
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).